IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHRISTOPHER DEEDY,<br><br>       Petitioner,<br><br>  v.<br><br>RUSSELL SUZUKI, *et al.*,<br><br>       Respondents. | CIVIL NO. 18-00094 DKW-RLP<br><br><br>**ORDER (1) DENYING MOTION TO STRIKE PETITION; AND (2) GRANTING DEEDY'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

## INTRODUCTION

In 2013, the State tried Deedy on second-degree murder and related firearms charges arising out of the November 2011 death of Kollin Elderts. The trial resulted in a hung jury. In Deedy's second trial in 2014, a jury acquitted him of second-degree murder, but deadlocked on lesser included reckless manslaughter and assault offenses. In October 2018, Deedy is scheduled to be retried in state circuit court for reckless manslaughter and assault following the Hawaii Supreme Court's December 2017 determination that the retrial will not violate his double jeopardy rights.

Deedy now seeks a writ of habeas corpus under 28 U.S.C. § 2241. Deedy asserts that the Double Jeopardy Clause of the United States Constitution forbids the State from trying him for a third time because: (1) the circuit court's ruling at the

first trial that there was no evidence of recklessness amounts to an acquittal that bars further prosecution for reckless manslaughter or any included offenses; (2) that same 2013 ruling collaterally estops the State from re-litigating recklessness or any included offenses; and (3) the State abandoned reckless manslaughter and any included offenses as theories of prosecution.

After careful review of the record, arguments of counsel, and consideration of the relevant authorities, including the Supreme Court's decision in *Evans v. Michigan*, 568 U.S. 313 (2013), the circuit court's determination of the absence of evidence of recklessness, and resulting decision not to instruct or submit the reckless manslaughter claim to the jury during the first trial, is an "acquittal" for purposes of double jeopardy. The State accordingly may not proceed with Deedy's October 2018 retrial on reckless manslaughter or any included offenses without violating constitutional prohibitions. Deedy's Section 2241 Petition is GRANTED.

## **BACKGROUND**

On November 5, 2011, Deedy fatally shot Kollin Elderts during an altercation at a fast food restaurant. He was indicted by a grand jury on November 16, 2011, and charged in a two-count Indictment: Count 1 charged second-degree murder, in violation of Hawaii Revised Statutes ("HRS") § 707-701.5, while Count 2 charged him with using a firearm to commit the offense charged in Count 1, in violation of HRS § 134-21. Ex. C, Dkt. No. 1-4. The Indictment also subjected Deedy to

conviction on lesser included offenses, such as reckless manslaughter and assault.[1]

*Id.*

## I. <u>Deedy's First Trial</u>

Deedy's first trial spanned July and August 2013. Because the Indictment expressly charged lesser included offenses under Count 1, the State was permitted to adduce evidence of such offenses, or argue them as alternative theories of guilt. The State, however, did neither. Instead, the State advanced a theory that Deedy was guilty of second-degree murder, *but not of any lesser included offenses*.[2]

---

[1]*See, e.g.*, *State v. Austin*, --- P.3d ---, 2018 WL 3207140, at *17 (Haw. June 29, 2018) (recognizing that "manslaughter and assault in the first, second, and third degrees are lesser included offenses of the charged offense, murder in the second degree"); *State v. Knight*, 80 Hawaiʻi 318, 324, 909 P.2d 1133, 1139 (1996) ("Reckless manslaughter is an included offense of second degree murder."); *State v. Kaeo*, 132 Hawaiʻi 451, 465, 323 P.3d 95, 109 (2014) ("assault in the first degree is a lesser included offense of murder in the second degree").

[2]Second degree murder is the offense of "intentionally or knowingly caus[ing] the death of another person." HRS § 707-701.5(1). Under HRS § 707-702(1)(a), "(1) A person commits the offense of manslaughter if: (a) He recklessly causes the death of another person[.]" A person commits assault in the first degree if he or she "intentionally or knowingly causes serious bodily injury to another person." HRS § 707-710. A person commits assault in the second degree if he or she "intentionally or knowingly causes substantial bodily injury to another" or "recklessly causes serious bodily injury to another person." HRS § 707-711.

The elements of second degree murder include a "conduct" element, the voluntary act or omission of the defendant, and a "results of conduct" element, resulting in the death of another person. Both elements require harboring an intentional or knowing state of mind. HRS § 702-204 (requiring proof of specified state of mind to convict). *See State v. Aganon*, 97 Hawaiʻi 299, 303, 36 P.3d 1269, 1273 (2001). Under Hawaii law, a person acts intentionally with respect to conduct when it is his or her "conscious object" to engage in that conduct, and a person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature. HRS §§ 702-206(1)(a) and (2)(a). A person acts intentionally with respect to the result of his conduct when it is his "conscious object to cause such a result," and he acts knowingly with respect to the result of his conduct when he is "aware that it is practically certain that his conduct will cause such a result." HRS §§ 702-206(1)(c) and (2)(c).

During its opening statement, the State argued that the evidence would support the charged offense of second-degree murder by use of a firearm. The parties did not propose lesser included offense instructions and, in fact, specifically objected to instructing the jury on reckless manslaughter. Ex. D (8/13/13 Tr. at 46); Dkt. No. 1-5; Respondents' Excerpts of Record ("ER") at 64–140; Dkt. No. 21-3 (Proposed Jury Instructions).

The circuit court saw it precisely the same way:

| | |
|---|---|
| THE COURT: | Both of you asked that a manslaughter instruction not be given. And from what I can recall of the evidence as to that final shot, I don't think there's any evidence to support manslaughter, anyway. |
| MR. FUDO: | Support reckless manslaughter. |
| THE COURT: | Yeah. |
| MR. FUDO: | Okay. |

---

Reckless manslaughter requires similar "conduct" (a voluntary act or omission) and "results of conduct" (death of another) elements as second degree murder. *Compare* HRS § 707-701.5(1) (proscribing "caus[ing] the death of another person") *with* HRS § 707-702(1)(a) (prohibiting "caus[ing] the death of another person"). Reckless manslaughter and second degree murder vary, however, with respect to the required state of mind. A "person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature." HRS § 702-206(3)(a). Likewise, a person acts recklessly with regard to the result of his conduct when he "consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." HRS § 702-206(3)(c). A risk is "substantial and unjustifiable," when, "considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702-206(3)(d).

THE COURT:     I don't think so, not as to that final shot.

MR. FUDO:     Not as to the lethal shot, right?

THE COURT:     I'm sorry.   The lethal shot.   Exactly.

8/13/13 Tr. at 46.   As a result, the circuit court ruled that it would not instruct the

jury on reckless manslaughter or on any other included offense.[3]

During closing argument, the prosecution reiterated its sole theory of guilt,

urging the jury to convict Deedy of second-degree murder and the related firearms

charge.   Correspondingly, the circuit court instructed the jury only on the same two

offenses.   The jury deadlocked after five days of deliberation, and unable to reach a

verdict, the circuit court declared a mistrial.

## II.   Deedy's Second Trial

The second trial, held a year later in 2014, covered sixteen days.   Although

the prosecution's evidence generally mirrored the evidence that it presented at the

---

[3]Hawaii law, in effect at the time of the first trial in 2013, required the circuit court to "instruct juries as to any included offenses when 'there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.'"   *State v. Haanio*, 94 Hawaiʻi 405, 413, 16 P.3d 246, 254 (2001) (quoting HRS § 701-109(5) (1993)), *overruled on other grounds by State v. Flores*, 131 Hawaiʻi 43, 314 P.3d 120 (2013).   *Flores*, decided several months after the mistrial was declared in Deedy's first trial, held that "*Haanio* is overruled to the extent that it holds the trial court's error in failing to give included offense instructions is harmless if the defendant was convicted of the charged offense or of a greater included offense."   *Flores*, 131 Hawaiʻi at 57, 314 P.3d at 134.   *Flores*, however, did not change the general rule regarding the circuit court's obligation to instruct the jury on lesser included offenses.   *Id.*, 131 Hawaiʻi at 51, 314 P.3d at 128 ("[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.").

first trial, the circuit court, over the parties' objections, instructed the second jury not only on second-degree murder under Count 1, but on reckless manslaughter (HRS § 707-702(1)(a)), first-degree assault (HRS § 707-710), and second-degree assault (HRS § 707-711), which it declined to do during the first trial.

Prior to the commencement of the second trial, Deedy filed a "Motion to Exclude Reckless Manslaughter Jury Instruction." *See* Ex. K (6/24/14 Motion), Dkt. No. 24-1. Deedy's motion argued, in part, that even if the circuit court determined that there was a rational basis in the evidence that supported instructing the jury on reckless manslaughter, double jeopardy barred it from doing so. More specifically, Deedy asserted that by declining to instruct the jury on reckless manslaughter during the first trial due to the absence of evidence, the circuit court had acquitted Deedy of that offense for double jeopardy purposes. Ex. K at 10–12.[4]

At the close of the evidence, just as they had done during the first trial, the parties objected to submitting instructions on the included offenses because there was no evidentiary basis to do so under applicable state law. At the August 1, 2014

_____

[4]Deedy also argued in the pretrial motion that there was no basis for revisiting law of the case on this issue, because at the first trial, neither party requested a jury instruction on reckless manslaughter and both objected to giving such an instruction because there was no rational basis in the evidence for doing so. He asserted that the circuit court expressly ruled, in accord with state case law, that no instruction on reckless manslaughter would be given because there was no rational basis in the evidence for acquitting on murder but convicting on reckless manslaughter, and that neither the evidence on Deedy's state of mind nor applicable case law had changed since the first trial. Ex. K at 2.

settlement of jury instructions and hearing on Deedy's motion, the defense argued that the circuit court's prior instructional ruling—regardless of the label or correctness of the decision—was a resolution of some or all of the elements of the lesser offense, which under federal law, constituted an acquittal:

> MR. OTAKE: . . . the ruling of a judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense at issue[,] [and] the category of acquittals include judgments by the court that the evidence is insufficient to convict. And it doesn't matter if the ruling was infected with error, misunderstanding, or whatnot.
>
> THE COURT: Is this a judgment?
>
> MR. OTAKE: When you look at Exhibit A [the 8/13/13 Tr.] -- the point of those cases is it doesn't matter what it is. It --
>
> THE COURT: It's not a legal judgment, I mean, in the sense of a piece of paper saying this is the judgment.
>
> MR. OTAKE: It's not. And -- but it does -- the point is it's a finding.
>
> * * * *
>
> So following a lengthy first trial the Court found that there wasn't any evidence to support reckless manslaughter, and that finding was, in essence, saying that there was not evidence to support a conviction for reckless manslaughter. And as the United States Supreme Court says, it doesn't matter what you call it. If there's a finding like that,

> for double jeopardy purposes it's an acquittal. And so -- and it doesn't matter if the Court -- you know, it doesn't matter. What matters is that for double jeopardy purposes the State doesn't get another try to do that.

8/1/14 Tr. at 10–12. While the State disagreed with Deedy's double jeopardy conclusions, it concurred with the defense that the evidence again did not support giving the lesser included instruction: "just as in last year, we maintain that same position that there's not a rational basis in the evidence to support the giving of the manslaughter instruction." 8/1/14 Tr. at 23. Demonstrating that conviction, the State, in its closing argument, urged the second jury to convict Deedy of murder in the second degree, and not on any of the included offenses, because the evidence did not support those offenses under Count I. Ex. I (8/5/14 Tr. at 49–79), Dkt. No. 1-10; Ex. J (8/5/14 Tr. at 150–81), Ex. 1-11.[5]

The circuit court nonetheless denied Deedy's motion, concluding that its decision during the first trial was not tantamount to an acquittal because the court did not determine Deedy's "guilt or innocence." 8/1/14 Tr. at 27. The circuit court attempted to explain its reasoning in the following manner—

---

[5]The State told the jury it should not convict on the assault offenses because the evidence did not support finding that only serious bodily injury, rather than death, occurred. 8/5/14 Tr. at 24–25; The prosecution also urged jurors not to convict on reckless manslaughter or reckless assault, because the evidence did not support finding recklessness, in view of Deedy's uncontested testimony about his intentional state of mind when discharging his firearm. 8/5/14 Tr. at 21–25.

> After the first trial, the Court apparently said that it didn't think there was evidence to support a manslaughter instruction, in other words, that there was insufficient evidence to clearly require a lesser instruction, under this Court's interpretation of what a rational basis may require. Hence, this represented an evaluation based upon the rational basis test not a resolution or determination of guilt or innocence or the existence of any given element.

8/1/14 Tr. at 26–27. The circuit court also overruled the parties' objections, and concluded that, this time around, there was a rational basis in the evidence to give jury instructions on reckless manslaughter and the assault offenses, and it did so. 8/1/14 Tr. at 29; 39–45.

After deliberating for six days, the jury acquitted Deedy of second-degree murder, but was deadlocked on all of the lesser included offenses. The circuit court thereafter entered a not guilty verdict on the second-degree murder charge and concluded that Deedy could be retried on the lesser included offenses on which the second jury hung.

Deedy filed several motions to dismiss on November 26, 2014, specifically raising the federal constitutional claims at issue in this Petition, along with several additional state law claims. Following a hearing, the circuit court denied his motions in an April 24, 2015 minute order, Ex. G (4/24/15 Cir. Ct. Minute Order), Dkt. No. 1-8, and in a May 19, 2015 order that addressed Deedy's federal claims. Ex. H (5/19/15 Cir. Ct. Order), Dkt. No. 1-9.

## III.    **Deedy's Interlocutory Appeal to the Hawaii Supreme Court**

Deedy filed an interlocutory appeal from the circuit court's orders denying his

motions to dismiss, which was transferred to the Hawaii Supreme Court.   Ex. O,

Dkt. No. 24-5.   In that appeal, Deedy raised federal double jeopardy claims along

with other claims he does not pursue in his Petition, including those based on state

constitutional and statutory provisions.   The Hawaii Supreme Court, in a 4-1

decision, affirmed the circuit court's rulings and held that the State was not barred

from further retrial on reckless manslaughter and the included assault offenses.

*State v. Deedy*, 141 Hawaiʻi 208, 407 P.3d 164 (Dec. 14, 2017).

In doing so, the majority rejected Deedy's acquittal argument based, in part,

upon its characterization of the circuit court's ruling as "procedural in nature," and

ultimately determined that "a trial court's ruling on whether to issue jury instructions

on lesser included offenses does not constitute an acquittal for double jeopardy

purposes."   141 Hawaiʻi at 220, 407 P.3d at 176 (citing *Evans*, 568 U.S. at 319–20)

(explaining that procedural rulings that result in dismissals are not acquittals that

implicate double jeopardy concerns); *see also* 141 Hawaiʻi at 219, 407 P.3d at 175

(holding that "a trial court's decision resolving the issue of whether to give or

withhold certain jury instructions is not a 'resolution ... of some or all of the factual

elements of the offense charged' and, thus, does not constitute an acquittal")

(quoting *State v. Dow*, 72 Haw. 56, 65, 806 P.2d 402, 407 (1991)) (alteration in

original) (additional citation omitted).

In rejecting Deedy's claim of acquittal on the lesser included offenses, the

Hawaii Supreme Court was particularly concerned with a perceived lack of circuit

court authority, in view of Hawaii Rule of Penal Procedure ("HRPP") 29, to

pronounce an acquittal under the situation presented here.[6]   It declared that:

> the 'acquittal' rule does not apply to lesser included offenses
> where the greater charge has not been resolved by the factfinder,
> as was the case in Deedy's first trial.   Cases decided by this
> court and the Supreme Court did not involve the situation
> postulated by Deedy—where the defendant is deemed to have
> been acquitted of included offenses for double jeopardy purposes
> even though resolution of a greater charge is pending.

141 Hawaiʻi at 219, 407 P.3d at 175 (citing *State v. Poohina*, 97 Hawaiʻi 505, 510,

40 P.3d 907, 912 (2002); *Dow*, 72 Haw. at 65, 806 P.2d at 407; *Evans*, 568 U.S. at

315–16; *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571–72 (1977)).

Indeed, the Hawaii Supreme Court insisted that "a court lacks authority to grant a

judgment of acquittal of included offenses before granting an acquittal of the greater

---

[6]The Hawaii Supreme Court determined that HRPP 29(a) "provides no authority for a trial court to acquit a defendant of an included offense without first acquitting the defendant of the greater charge then pending before the factfinder.   That is, HRPP Rule 29(a) would not have allowed the circuit court in this case to acquit Deedy of the included offenses of reckless manslaughter, assault in the first degree, and assault in the second degree without first acquitting him of second-degree murder."   141 Hawaiʻi at 219, 407 P.3d at 175.

offense, and indisputably, the circuit court did not grant an acquittal of the greater offense in the first trial in this case."   141 Hawai'i at 219, 407 P.3d at 175.

The Hawaii Supreme Court remanded to the circuit court for further proceedings.   141 Hawai'i at 234, 407 P.3d at 190.   Deedy's third trial in circuit court is set to commence on October 15, 2018 on a lead charge of reckless manslaughter.   Pet. ¶ 8.

## IV.   Deedy's Section 2241 Petition

Deedy's Section 2241 Petition seeks to bar further retrial on the counts in the Indictment.   It asserts three grounds, each seeking to vindicate his right against double jeopardy under the Fifth Amendment to the United States Constitution: (1) the circuit court's ruling at the first trial that there was no evidence of recklessness as to the fatal shot was an acquittal that bars further prosecution under Count 1 for reckless manslaughter or any included offense; (2) that same finding collaterally estops the State from re-litigating recklessness or any included offense under Count 1; and (3) the State abandoned second-degree murder's lesser included offenses, including reckless manslaughter, as theories of prosecution.   Pet. ¶ 2.

The Petition seeks a ruling from this Court that would not only preclude Deedy's further prosecution in the state courts for the death of Elderts, but would direct Respondents to dismiss Cr. No. 11-1-1647 with prejudice and order Respondents to discharge him from bail and pretrial release.   Pet. ¶ 12.

Respondents Russell Suzuki, Attorney General, State of Hawai'i; Keith M.
Kaneshiro, Prosecuting Attorney for the City and County of Honolulu; and Nolan
Espinda, Director, Department of Public Safety, State of Hawai'i (collectively,
"Respondents"), filed a response in opposition to the Petition on May 21, 2018.
Dkt. No. 21. Deedy filed his reply on June 20, 2018. Dkt. No. 24.

On April 20, 2018, Respondent Kaneshiro filed a Motion to Strike Deedy's
Petition and Deedy's Memorandum in Support, Dkt. No. 14, raising procedural
defects in the filings. Deedy filed an opposition to the Motion to Strike on May 20,
2018, Dkt. No. 19, and there was no reply.

Following briefing from the parties and a hearing on April 25, 2018, the Court
denied without prejudice Deedy's Motion to Stay State Court Proceedings, Dkt. No.
5, and Motion to Expand the Record and for an Evidentiary Hearing, Dkt. No. 6.
*See* Dkt. No. 16 (4/25/18 EP).

## STANDARD OF REVIEW

Habeas relief is proper under Section 2241 when the petitioner shows that a
retrial would violate his or her Fifth Amendment right against double jeopardy. *See*
*Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009) ("a habeas petition raising a
double jeopardy challenge to a petitioner's pending retrial in state court is properly

treated as a petition pursuant 28 U.S.C. § 2241").[7]   A petition under Section 2241,

unlike one under 28 U.S.C. § 2254, is not subject to the heightened standards set

forth in Section 2254(d).   *Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004).

That is, a Section 2241 petitioner need not show that the state court decision was

contrary to or an unreasonable application of clearly established federal law, as

required by Section 2254(d).   *Id*. at 888.   Further, Deedy's Section 2241 Petition

"is not reviewed under the deferential standards imposed by AEDPA."   *Wilson*, 554

F.3d at 828; *Harrison v. Gillespie*, 640 F.3d 888, 897 (9th Cir. 2011) (en banc).

Rather, a federal court must grant habeas relief if it concludes "on *de novo* review

that retrying him on [the] charges would violate the Double Jeopardy Clause."

*Wilson*, 554 F.3d 828; *Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) ("Further,

the text of both § 2254(a) and § 2241(c) refers only to the substantive invalidity of

the confinement under the Constitution and contains no requirement of deference to

state court adjudications.   Federal courts governed only by those sections,

---

[7]A habeas petition under Section 2241 is subject to both the Rules Governing Section 2254 Cases in the United States District Courts and the Federal Rules of Civil Procedure.   *See* 28 U.S.C. foll. § 2254 ("Habeas Rules"), Rule 1(b) (court may apply rules to habeas petitions other than petitions filed under § 2254), and Rule 12 (Federal Rules of Civil Procedure apply to habeas actions if not inconsistent with governing statutes and rules); *see also United States v. Rice*, No. CR 12-00818 PJH, 2013 WL 12063970, at *1 (N.D. Cal. Feb. 27, 2013) (recognizing applicability of rules to Section 2241 petitions); *Lane v. Feather*, 584 F. App'x 843 (9th Cir. 2014) (citing Rule 1(b) and stating that the district court did not err in applying Rule 4 of the Habeas Rules to a Section 2241 Petition).

therefore, necessarily decide the issues before them *de novo*, as was done before

AEDPA's addition of § 2254(d) in 1996.")

## DISCUSSION

## I.    The Motion to Strike Is Denied

Respondent Kaneshiro moves to strike the Petition and Memorandum in

Support for alleged non-compliance with procedural and substantive requirements

of Sections 2241 and 2242.   The Motion to Strike is DENIED.[8]

Although not signed by Deedy, the Petition is signed by his counsel of record,

and is therefore "verified by the person for whose relief it is intended or by someone

acting in his behalf," as required by Section 2242.[9]   *See also* Habeas Rule 2(c)(5) of

the Rules Governing Section 2254 Cases in the United States District Courts

---

[8]Respondent Kaneshiro also asks the Court to strike Deedy's Memorandum in Support of his Petition based on violations of this Court's Local Rules.   For instance, the Memorandum in Support did not include a table of contents or table of authorities, as required by LR7.5(f) for any pleading exceeding 15 pages.   Deedy remedied the deficiencies by filing the required tables on May 20, 2018.   Dkt. No. 20.   Further, although Respondent correctly notes that Deedy's Memorandum in Support is 37 pages long, contains 9,708 words, and was filed without a certificate of word count in violation of LR7.5, the Court declines to strike the filing on this basis, particularly in the absence of any showing of prejudice.   *Preez v. Banis*, No. CV 14-00171 LEK, 2014 WL 3427352, at *2 (D. Haw. July 14, 2014) ("[E]ven if there was a violation, it is a minor violation, and this Court has the discretion to decide whether or not it is appropriate to strike the document."); *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1087 (E.D. Cal. 2006) ("A district court has broad discretion over the application of its own local rules and it may overlook violations where there is no indication that the opposing party is prejudiced.") (citing *Green v. Baca*, 306 F. Supp. 2d 903, 913 n.40 (C.D. Cal. 2004)).

[9]*See, e.g.*, Pet. ¶ 9 ("The undersigned is Deedy's retained counsel of record in the state courts. The petitioner has not signed this motion because he resides on the mainland.   Counsel declares he has the authority to sign for the petitioner."); Pet. ¶ 11 ("Counsel declares under penalty of law that the representations set forth above are true and correct to the best of his knowledge and belief.").

("Habeas Rules") (petition must be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under Section 2242). Indeed, the law of this Circuit permits "a habeas petitioner's attorney [to] sign and verify the petition for the petitioner." *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996). Even if that were not true, "the defect is one that the district court may, if it sees fit, disregard." *Johnson v. Gomez*, 1997 WL 703770, at *3 (N.D. Cal. Oct. 28, 1997), *aff'd*, 166 F.3d 343 (9th Cir. 1998) (citing *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990)). Accordingly, Respondent's Motion to Strike is denied on this ground.

Respondent Kaneshiro also moves to strike the Petition because it allegedly names the wrong defendant: "Deedy is not in the physical custody of the Acting Attorney General, Director of Dept. of Public Safety, and/or Respondent Kaneshiro," none of whom can afford him the habeas relief he seeks. Motion to Strike at 4, Dkt. No. 14. As discussed more fully below, the Court's federal habeas jurisdiction over Deedy's double jeopardy claims lies under Section 2241, rather than Section 2254. *Harrison v. Gillespie*, 640 F.3d 888, 896 (9th Cir. 2011) (en banc); *Wilson v. Belleque*, 554 F.3d 816, 828 (9th Cir. 2009); *Stow v. Murashige*, 389 F.3d 880, 888 (9th Cir. 2004). As *Wilson* recognizes, "custody" is defined broadly and "has not been restricted to situations in which the applicant is in actual, physical custody." 554 F.3d at 822 (quotation marks and citation omitted).

Instead, the "custody" requirement is satisfied when there is a "significant restraint" on a person's liberty that is not shared by the public generally. *Id.* Section 2241's custody requirement, which is not tied to a state court judgment, is satisfied here because Deedy is on bail and under pretrial release conditions, the revocation of which could result in pretrial detention.[10] *Boston Mun. Court v. Lydon*, 466 U.S. 294, 300–302 (1984) (pretrial release on personal recognizance sufficient to establish Section 2241 custody); *Wilson*, 554 F.3d at 821–22 (custodial requirement met in cases involving prisoners released on parole, on their own recognizance, and free on bail).

Although Deedy does not name the specific "Oahu Intake Service Center Officer" who has direct supervision responsibilities over him, he is permitted to name "as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004). To the extent the Director of the Department of Public Safety exercises legal control over Deedy's pretrial "custody" in his state court case, Espinda is a properly-named

---

[10]*See Gouveia v. Espinda*, No. CV 17-00021 SOM/KJM, 2017 WL 3687309, at *6 (D. Haw. Aug. 25, 2017) ("[Petitioner] is on 'supervised release' in the [Hawaii] state system, which, unlike 'supervised release' in the federal system, occurs pretrial. [Petitioner] is, in essence, equivalent to a federal defendant who is subject to pretrial release conditions monitored by a United States Pretrial Services Officer.").

respondent.[11]   Likewise, Respondents do not dispute that the Prosecuting Attorney and/or the State Attorney General, are persons whom this Court could lawfully order to obtain dismissal of the pending circuit court action and rescission of Deedy's bail. *See also Gouveia v. Espinda*, No. CV 17-00021 SOM/KJM, 2017 WL 3687309, at *6 (D. Haw. Aug. 25, 2017) (finding no impropriety where Section 2241 petitioner, raising double jeopardy claims, named as respondents the Director of the Department of Public Safety and the Attorney General of the State of Hawaii).   The Court accordingly denies the Motion to Strike on this basis as well.

## II.    No Jurisdictional or Procedural Defect Precludes the Court's Review

Before consideration of the merits, the Court addresses the jurisdictional and procedural arguments that compose the greater part of Respondents' opposition to Deedy's Petition.   As explained below, each of Respondents' arguments challenging the Court's habeas jurisdiction under Section 2241, advocating the application of the *Rooker-Feldman* doctrine, and asserting Deedy's purported waiver and/or forfeiture of his federal double jeopardy claims is without merit.

---

[11]Respondent Kaneshiro does not dispute that the intake services employee that he asserts is the only appropriately named respondent is an employee of the Department of Public Safety, whose director, Nolan Espinda, is one of the named respondents.   Nor does Kaneshiro dispute that Espinda has authority over DPS intake services division employees and any matters those employees are authorized by him to undertake in the scope of their employment.

**A.    The Court Has Jurisdiction Under Section 2241**

Respondents first contend that "Congress has not conferred jurisdiction to federal district courts to review judgments rendered by a State's highest court being attacked in a petition brought under § 2241."   Mem. in Opp'n at 7, Dkt. No. 21-1. This assertion is inconsistent with federal law.

"[I]t is § 2241 that provides generally for the granting of writs of habeas corpus by federal courts, implementing 'the general grant of habeas authority provided by the Constitution.'"   *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (quoting *White v. Lambert,* 370 F.3d 1002, 1006 (9th Cir.), *cert. denied,* 543 U.S. 991 (2004)).   In *Boston Municipal Court v. Lydon*, 466 U.S. 294, 299–303 (1984), the Supreme Court itself approved of federal court habeas review of a state defendant's double jeopardy claims before the onset of a state retrial.   The Ninth Circuit has done so too.   *See, e.g.*, *Hartley v. Neely*, 701 F.2d 780, 781 (9th Cir. 1983) (per curiam) ("Indeed, we are convinced that a petitioner in state custody can only be assured freedom from double jeopardy by giving him access to habeas review prior to a second trial.   We therefore hold that pretrial habeas corpus review is appropriate in those cases where, as here, all other state remedies were exhausted."); *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992) ("Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pretrial habeas petitions that raise a colorable claim of double

jeopardy."); *Stow*, 389 F.3d at 888–92 (finding federal jurisdiction proper under Section 2241 and granting petition on double jeopardy claim before impending retrial).[12]

Accordingly, as recognized by the Ninth Circuit, this Court's habeas jurisdiction lies properly under Section 2241.

### B. The *Rooker-Feldman* Doctrine Is No Bar to this Court's Federal Habeas Jurisdiction

Despite the evident jurisdictional basis for this Court to consider Deedy's Section 2241 Petition, Respondents interestingly allocate a significant portion of their brief to the flawed assertion that federal courts lack habeas jurisdiction over a double jeopardy claim challenging a pending prosecution in state court. Respondents do so on account of their muddled application of the *Rooker-Feldman* doctrine.[13]   *See* Mem. in Opp'n at 3–19.   The primary source of their confusion, as best the Court can discern, is the conflation of direct appellate review and collateral

_____

[12]Notably, "the federal circuit courts which have specifically addressed this issue have uniformly held that a pretrial petition seeking to preclude a re-trial is properly brought pursuant to § 2241." *Hoffler v. Bezio*, 831 F. Supp. 2d 570, 575 (N.D.N.Y. 2011), *aff'd*, 726 F.3d 144 (2d Cir. 2013) (citing cases); *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir. 2001) (per curiam); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998)); *Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992).

[13]*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923).   This rule, commonly known as the *Rooker-Feldman* doctrine, bars a losing party in state court from seeking what amounts to appellate review of the state-court judgment in federal court based on the losing party's claim that the state judgment itself violates the loser's federal rights.   *See Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998).

review, and their associated discussion of Supreme Court certiorari jurisdiction under 28 U.S.C. § 1257 and federal habeas jurisdiction under Section 2241.

Ninth Circuit law explicitly recognizes federal district court habeas jurisdiction in cases such as this one.   Ninth Circuit law is equally clear that the *Rooker-Feldman* doctrine has no place in habeas jurisprudence and does not serve to limit federal district court habeas jurisdiction, as it does in other contexts. Respondents refuse to recognize the import of these cases.   Instead, they insist that because the "*Supreme Court* [itself] did not render the decisions in any of the cases, the [Ninth Circuit] holdings therein cannot overrule or modify the holdings in *Rooker* or *Feldman*."   Mem. in Opp'n at 15 (emphasis added).   Respondents further argue that only the United States Supreme Court, under 28 U.S.C. § 1257, and not any other federal court, may consider Deedy's instant Petition. Respondents' arguments are entirely without merit or even practical sense.

First, Section 1257 has no present application to Deedy's Section 2241 Petition.[14]   As noted above, Section 2241 is the proper vehicle for his double

_____

[14]The statute provides in relevant part:

> (a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the

jeopardy claim in federal district court.   Deedy is not limited to taking a direct

appeal of the Hawaii Supreme Court's decision, by writ of certiorari, to the United

States Supreme Court under Section 1257.   *See Cty. Court of Ulster Cty., N.Y. v.*

*Allen*, 442 U.S. 140, 149 n.7 (1979) (rejecting jurisdictional argument "that habeas

corpus review was unavailable in advance of a petition for certiorari" under Section

1257, because Section 2254(a) "gives federal courts jurisdiction 'to entertain an

application for a writ of habeas corpus in behalf of a person in custody pursuant to

the judgment of a State court' if that custody allegedly violates 'the Constitution or

laws or treaties of the United States' . . . there is no statutory requirement of an

appeal to this Court as a predicate to habeas jurisdiction").   To be clear, direct

review of a state court judgment under Section 1257 is neither required of a habeas

petitioner nor is it the functional equivalent of habeas review.[15]

Second, it is well-established that the *Rooker-Feldman* doctrine does not

touch the writ of habeas corpus.   This Court is bound by Ninth Circuit precedent,

---

Constitution or the treaties or statutes of, or any commission held or authority
exercised under, the United States.

28 U.S.C. § 1257.

[15]*See Coleman v. Thompson*, 501 U.S. 722, 730 (1991) ("When [the Supreme] Court reviews a
state court decision on direct review pursuant to 28 U.S.C. § 1257, it is reviewing the *judgment*; if
resolution of a federal question cannot affect the judgment, there is nothing for the Court to do.
This is not the case in habeas.   When a federal district court reviews a state prisoner's habeas
corpus petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in
violation of the Constitution or laws or treaties of the United States.'   The court does not review a
judgment, but the lawfulness of the petitioner's custody *simpliciter*.").

which is unequivocal: habeas jurisdiction is a "statutory exception" to

*Rooker-Feldman*.

> Under the modern statutory structure, the principle that there should be no appellate review of state court judgments by federal trial courts has two particularly notable statutory exceptions: First, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who claim that the state court has made an error of federal law. 28 U.S.C. § 2254. Second, a federal bankruptcy court has original jurisdiction under which it is "empowered to avoid state judgments, *see, e.g.*, 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.*, 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.*, 11 U.S.C. §§ 727, 1141, 1328." *In re Gruntz*, 202 F.3d at 1079.

*Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003); *Gouveia*, 2017 WL 3687309, at *6 ("[I]t is well settled that the *Rooker-Feldman* doctrine is inapplicable to cases seeking habeas corpus relief.").[16]

The reasons for this exception are clear, and its existence, in practice, is beyond serious dispute. Respondents, however, remain silent with respect to the

_____

[16]*See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 & n.8 (2005) ("Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction. . . . Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions.") (citing 28 U.S.C. § 2254(a)) (other citations omitted); *Gonzalez-Diaz v. Lopez*, 957 F. Supp. 2d 143, 147–48 n.2 (D.P.R. 2013) ("Because respondents' arguments regarding these legal doctrines do not apply to habeas petitions, the Court does not analyze these arguments in its discussion. 'The *Rooker–Feldman* doctrine—with certain exceptions (*e.g.*, **habeas corpus**)—precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree to which the assailant was a party.'") (quoting *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (emphasis in *Gonzalez-Diaz*)).

authoritative case law (including several cases cited in Deedy's Petition), which illustrates the well-established rule that state court defendants are entitled to seek habeas relief in lower federal courts before retrial in light of "the unique nature of the double jeopardy right." *Lydon*, 466 U.S. at 302–303. These decisions, binding on this Court, are "based upon the special nature of the double jeopardy right and the recognition that the right cannot be fully vindicated on appeal following final judgment, since in part the Double Jeopardy Clause protects 'against being twice put to *trial* for the same offense.'" *Id.* at 303 (quoting *Abney v. United States*, 431 U.S. 651, 661 (1977)). A petitioner's double jeopardy rights, like habeas review itself, "protects interests wholly unrelated to the propriety of any subsequent conviction[;] a requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause." *Id.* (citation and quotation marks omitted); *see also Mannes v. Gillespie*, 967 F.3d 1310, 1312 (9th Cir. 1992) ("Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pretrial habeas petitions that raise a colorable claim of double jeopardy."); *Hartley v. Neely*, 701 F.2d 780, 781 (9th Cir. 1983) (per curiam) ("a petitioner in state custody can only be assured freedom from double jeopardy by giving him access to habeas review prior to a second trial").

Even if Respondents were correct, they offer no plausible or practical explanation for what would remain of a state defendant's double jeopardy rights in the absence of federal district court habeas review. If limited to seeking certiorari from the United States Supreme Court, it is unlikely that meaningful review would be timely available to most state court defendants seeking pretrial redress for double jeopardy claims. This runs afoul of long-standing precedent, and if followed to its logical end, "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." *Abney*, 431 U.S. at 660–61. Indeed, these "protections would be lost if the accused were forced to 'run the gauntlet' a second [and third] time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit." *Id*. at 662. This cannot be so.

Because this Court has habeas jurisdiction under Section 2241, unimpeded by the *Rooker-Feldman* doctrine, it rejects Respondents' arguments to the contrary.

## C. Deedy Neither Waived Nor Forfeited His Double Jeopardy Claims

Respondents assert the factually and legally deficient argument that "Deedy's decision not to file his motion asserting his federal double jeopardy claims until months after the retrial concluded reveals a failure to pursue the claims in a timely

and diligent manner that supports the conclusion he waived/forfeited the same."

Mem. in Opp'n at 21. They are mistaken.

The record reflects that Deedy raised all of the grounds asserted in his Petition *before* the second trial commenced, *during* the course of the second trial, and then *again* when he moved to dismiss the charges after the second trial concluded. Exs. H, K & L. How one can even begin to claim waiver on this record is a mystery.

Nor would Respondents achieve any greater success by framing their contentions as a failure to exhaust. "As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citing *Cooper v. Neven*, 641 F.3d 322, 326–27 (9th Cir. 2011)). To properly exhaust, a petitioner must fairly present each ground for relief to the state's highest court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982).

The state court record set forth above clearly demonstrates that Deedy raised his double jeopardy concern before the second trial commenced, when he asked the

circuit court to preclude instructing the jury on reckless manslaughter, arguing that the court's prior instructional ruling during the first trial acted as an acquittal of that offense under *Evans v. Michigan.* Ex. K. He argued those claims again during the second trial in the context of settling the jury instructions. Ex. L. And he then filed a motion to dismiss on state and federal double jeopardy grounds, presenting those claims once again to the circuit court after the second trial had ended. When the circuit court denied that motion, Ex. H, Deedy appealed the denial to the state appellate courts, contending that his state and federal rights to be free of double jeopardy had been violated. *See Deedy*, 141 Hawaiʻi 208, 407 P.3d 164. And after the Hawaii Supreme Court affirmed the circuit court, he filed his Petition raising the very same federal issues. Under these circumstances, Deedy properly exhausted his Fifth Amendment double jeopardy claim.

The Court next turns to the merits of Deedy's Petition.

## III.    Deedy's Section 2241 Petition Is Granted

Deedy raises three grounds for relief, each seeking to vindicate his right against double jeopardy under the Fifth Amendment to the United States Constitution. For the reasons that follow, the Court determines that double jeopardy bars further prosecution in the state courts because the circuit court acquitted Deedy of reckless manslaughter. The circuit court did so by ruling, at Deedy's first trial, that there was no "evidence to support manslaughter" because the

State had not shown that the "lethal shot" was "reckless." Because the Court finds in Deedy's favor on the first ground asserted in his Petition, it does not reach his alternative claims of collateral estoppel and abandonment.

### A.    Legal Framework: Acquittal Standard Under *Evans*

The Fifth Amendment's Double Jeopardy Clause protects a person from being "twice put in jeopardy of life or limb" for the same offense. "This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018). Jeopardy attaches in a jury trial "when the jury is empaneled and sworn." *United States v. Gaytan*, 115 F.3d 737, 742 (9th Cir. 1997). "The protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317 (1984). An acquittal occurs when a factfinder's decision at trial, "whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572 (1977).

Deedy's primary claim invokes *Evans v. Michigan*, 568 U.S. 313 (2013). *Evans* establishes that "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense" is an acquittal that precludes retrial. *Id.*

at 318 (citing *United States v. Scott*, 437 U.S. 82, 98 & n.11 (1978); *Burks v. United States*, 437 U.S. 1, 10 (1978); *Martin Linen Supply Co*., 430 U.S. at 571).   *Evans* identifies three types of "substantive rulings" that satisfy this acquittal standard:

> [1] "a ruling by the court that the evidence is insufficient to convict," [2] a "factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability," and [3] any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence."   These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. Procedural dismissals include rulings on questions that "are unrelated to factual guilt or innocence," but "which serve other purposes," including "a legal judgment that a defendant, although criminally culpable, may not be punished" because of some problem like an error with the indictment.

*Id.* at 318–19 (quoting *Scott*, 437 U.S. at 91, 98, and n.11) (some alterations in *Evans*).

In *Evans,* the Supreme Court concluded that the state defendant's midtrial acquittal barred retrial under double jeopardy principles, even though the acquittal was based on the trial court's "clear misunderstanding of what facts the State needed to prove" to sustain a conviction for arson.   *Id*. at 316.   The state trial court, persuaded by applicable, but erroneous Michigan Criminal Jury Instructions, concluded the state was required to prove, as an element of arson, that the burned property was not a dwelling house, notwithstanding Michigan law to the contrary. *Id.* at 316–17.   After the trial court erroneously granted a judgment of acquittal, the

state sought retrial in view of the error.   The state supreme court rejected defendant's double jeopardy claim, concluding instead that when a trial court grants a defendant's motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for the purposes of double jeopardy.   *Id.*   The Supreme Court reversed, holding that, despite the error, the acquittal was a final judgment. *Id.* at 316–18.   *Evans* reasoned, "'the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character.'"   *Id.* at 318 (quoting *Scott*, 437 U.S. at 98).   The Supreme Court determined that further retrial was barred due to the "acquittal," holding: "[W]e know the trial court acquitted Evans . . . because it acted on its view that the prosecution had failed to prove its case."   *Id*. at 325.

Utilizing this framework, the Court turns to the facts at hand.

## B.   The Circuit Court's Instructional Ruling During the First Trial Is, For Double Jeopardy Purposes, an Acquittal

As detailed below, Deedy may not be retried for reckless manslaughter because the circuit court's ruling at the first trial—that there was no rational basis in the evidence to support a reckless manslaughter jury instruction—constituted an acquittal for purposes of double jeopardy.   Here, as was the case in *Evans*, "'it is

plain that the [circuit court] ... evaluated the [State's] evidence and determined that it was legally insufficient to sustain a conviction." *Evans*, 568 U.S. at 320 (quoting *Martin Linen*, 430 U.S. at 572) (alterations in *Evans*).

Under applicable state law, the circuit court was required to give the jury an instruction "as to any included offenses when 'there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.'" *State v. Haanio*, 94 Hawai'i 405, 413, 16 P.3d 246, 254 (2001) (quoting HRS § 701-109(5) (1993)), *overruled on other grounds by State v. Flores*, 131 Hawai'i 43, 314 P.3d 120 (2013); *accord Flores*, 131 Hawai'i at 51, 314 P.3d at 128 ("[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."). Notwithstanding this obligation, at Deedy's first trial, the circuit court declined to instruct the jury on lesser included offenses, including reckless manslaughter, because the evidence was insufficient to do so. The circuit court declared, "I don't think there's any evidence to support manslaughter." 8/13/13 Tr. at 46.[17]

---

[17]This surprised no one, as the parties themselves agreed that there was no evidence of recklessness and jointly asked the circuit court *not* to instruct on the lesser included offenses. Indeed, that continued to be both parties' consistent position not only through the first trial, but through the second trial as well.

The circuit court's instructional ruling demonstrably falls within the parameters of each of the three categories of "substantive rulings" described in *Evans* and is therefore, an acquittal. First, it was "a ruling by the [circuit] court that the evidence is insufficient to convict." *Evans*, 568 U.S. at 318 (citation and quotation marks omitted). As was the case in *Evan*s, the circuit court here was required to evaluate the evidence before determining whether it supported giving the lesser included instruction to the jury. *Compare Evans*, 568 U.S. at 320 ("The trial court granted Evans' motion under a rule that requires the court to 'direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.'") (citation omitted). Likewise, the circuit court's "oral ruling leaves no doubt that it made its determination on the basis of '[t]he testimony' that the State had presented." *Id.* (citation omitted).[18] *See also Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986) ("the category of acquittals includes 'judgment[s] … by the court that the evidence is insufficient to convict") (quoting *Scott*, 437 U.S. at 91). Second, the determination that there was not "any evidence to support manslaughter"—*e.g.*, no evidence that the "lethal shot" was "reckless"—was a "factual finding [that] necessarily establish[es] the criminal defendant's lack of

---

[18]When objecting to a reckless manslaughter instruction at the second trial, the State acknowledged that "[i]n the first trial . . . [the circuit court] made its original decision *based on the evidence* presented in the first trial, and based on the appropriate standard at the time." Pet. Ex. A at 5 (11/25/15 Opening Br.) (quoting RA9 294), Dkt. No. 1-2.

criminal culpability." *Evans*, 568 U.S. at 319 (citation and quotation marks omitted). It is axiomatic that if there was no evidence of recklessness, Deedy could not have had the culpability necessary to commit reckless manslaughter or its included offenses. Third, the circuit court's ruling "relate[s] to the ultimate question of guilt or innocence." *Evans*, 568 U.S. at 319 (citation and quotation marks omitted). The circuit court's instructional "ruling was not a dismissal on a procedural ground 'unrelated to factual guilt or innocence,' like the question of 'preindictment delay' . . . , but rather a determination that the State had failed to prove its case" on the reckless manslaughter offense, based upon the evidence presented, and thus related "to the ultimate question of guilt or innocence." *Evans*, 568 U.S. at 318–19 (quoting *Scott*, 437 U.S. at 98, 99).[19]

_____

[19]In its decision affirming the circuit court, the Hawaii Supreme Court acknowledged the three categories of rulings that satisfy the "acquittal" standard under *Evans*, but did not analyze whether each type was applicable on the record before it. Instead, the court appeared moved by the State's effort to distinguish *Evans* on the basis that it involved a motion for a judgment of acquittal. 141 Hawai'i at 218, 407 P.3d at 174 n.5. The court also placed great weight on HRPP 29. According to the court, the circuit court's instructional ruling could not have amounted to an acquittal as a matter of law because there had been no acquittal on the greater charge, and until that occurred, HRPP 29 would have prohibited an acquittal on the lesser charges. *Id.* at 218–19, 407 P.3d at 174–75 ("[t]his rule provides no authority for a trial court to acquit a defendant of an included offense without first acquitting the defendant of the greater charge"). The court's reliance on HRPP 29, however, is misplaced. *Evans* teaches that an acquittal is an acquittal for double jeopardy purposes even when the acquittal is issued contrary to law. *Evans*, 568 U.S. at 320. Nor does HRPP 29 alter this Court's double jeopardy analysis, following *Evans*, which does not demand acquittal on the second-degree murder charge before or in addition to acquittal on the lesser included offenses.

Respondents do little to challenge the application of *Evans* to the facts of this case. Instead, they quarrel with the weight to be given to the circuit court's instructional ruling. In Respondents' estimation, because the circuit court's ruling came during what they characterize as an "informal" proceeding to discuss the verdict form, it could not possibly constitute an acquittal of any offense. Mem. in Opp'n at 23, 28.

Respondents place far too much weight on the environment in which the ruling was issued, and far too little weight on what the ruling actually said and did. As an initial matter, the circuit court's ruling occurred on the record in open court, not in some unrecorded, unmemorialized back room proceeding. Moreover, neither the label of the ruling, nor the perceived formality of the proceeding matters.

> In *Martin Linen*, the Court was presented with the question of whether the government could appeal the trial court's dismissal of an indictment, or whether the appeal was barred by the Double Jeopardy Clause. The answer turned on whether the judge's dismissal of the case constituted an "acquittal." The Court stated that "we must determine *whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged*." In examining the judge's order dismissing the case, the Court explained that "[t]here can be no question that the judgments of acquittal entered here by the District Court were 'acquittals in substance as well as form'" because the judge found the prosecution had failed to present sufficient evidence to meet its burden.
>
> The State's reliance on the "form" versus "substance" distinction takes out of context *Martin Linen*'s discussion of the relevant

appellate court inquiry into a judge's order terminating a case in favor of the defendant. We have found no case, other than the Hawaii Supreme Court decision in *Stow*, that has applied this test to a jury's "not guilty" verdict. To do so would divorce the test from its rationale—*i.e.*, to determine if the trial court terminated the case for insufficiency of the evidence or for a matter unrelated to the merits, like pre-indictment delay.

*Stow v. Murashige*, 389 F.3d 880, 889–90 (9th Cir. 2004) (citing 430 U.S. at 566–67) (footnote omitted).

Here, the circuit court's decision was based upon its substantive view of the sufficiency of the evidence. It was not a procedural decision, such as a dismissal for pre-indictment delay that was unrelated to factual guilt or innocence. *See United States v. Blanton*, 476 F.3d 767, 770–71 (9th Cir. 2007) (holding that double jeopardy prohibited appeal by the government because the judge's ruling of acquittal was not "unrelated to factual guilt or innocence"). Equally important, the fact that the circuit court did not label its decision as an "acquittal" or pursuant to Rule 29 is of no consequence. And certainly, the fact that the ruling was issued in what the State refers to as an "informal" proceeding is of even less consequence. Under *Martin Linen* and *Evans* and *Stow*, the circuit court's instructional ruling, regardless of its label and regardless of its so-called informality, stands as an acquittal.

Further, the circuit court's characterization of its own action cannot control the classification. *See Delap v. Bugger*, 890 F.2d 285, 307 (11th Cir. 1989) ("The refusal to instruct a jury on an offense constitutes an implicit acquittal of that offense

for double jeopardy purposes. . . . The trial judge's characterization of his or her actions does not control whether there was an 'acquittal' for double jeopardy purposes.") (citing *Saylor v. Cornelius*, 845 F.2d 1401, 1403–05 (6th Cir. 1988)).[20] Accordingly, the circuit court's remark during the settling of jury instructions during Deedy's second trial in 2014, characterizing its own prior decision as something other than "based on guilt or innocence," is of no moment. *See* 8/1/14 Tr. at 26–27. *Evans* makes clear that even if the circuit court believes in hindsight that it was erroneous to find that the evidence did not support submitting reckless manslaughter to the jury, that ruling was nonetheless an acquittal that bars retrial of that offense under principles of double jeopardy.[21] As directed by *Evans*, "[c]ulpability (*i.e.*, the

_____

[20]In *Delap*, the defendant was acquitted of "felony murder" at his first trial, but that acquittal did not bar his second conviction for "premeditated murder." The reviewing court determined that:

> the finding that there was insufficient evidence of felony murder constituted an acquittal of felony murder, barred any appeal of that acquittal, and barred any further prosecution for that felony murder. *Smalis v. Pennsylvania*, 476 U.S. 140, 142 (1986) (judgment that evidence is legally insufficient to sustain a guilty verdict constituted an acquittal for double jeopardy purposes); *Burks v. United States*, 437 U.S. 1, 15–17 (1978). The state certainly was aware of this when it voluntarily withdrew its proposed felony murder instruction at Delap's second trial. Delap's successful appeal of his first conviction "wiped the slate clean" as to the premeditated murder theory, but did nothing to disturb his acquittal of felony murder.

*Delap v. Dugger*, 890 F.2d 285, 314 (11th Cir. 1989), *abrogated on other grounds by Floyd v. Sec'y, Fla. Dep't of Corr.*, 638 Fed.Appx. 909, 924 (11th Cir. 2016) (per curiam).

[21]Nor is it significant whether the circuit court erred in not submitting the lesser included offenses to the jury during the first trial. *Evans* is clear that the correctness of the instructional ruling does not factor into whether it counts as an acquittal for purposes of double jeopardy—

'ultimate question of guilt or innocence') is the touchstone, not whether any particular elements were resolved or whether the determination of nonculpability was legally correct." *Evans*, 568 U.S. at 324 (citation omitted). The circuit court's instructional ruling during the first trial, determining that there was no rational basis in the evidence to give an instruction on reckless manslaughter, was necessarily a determination that the evidence was insufficient to establish Deedy's criminal liability for the lesser offenses. That, under *Evans*, is an acquittal.

The Court's holding comports with the principles animating federal double jeopardy jurisprudence. *See Yeager v. United States*, 557 U.S. 110, 117–18 (2009) (The Double Jeopardy Clause is largely based on "the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense[.]") (internal

---

There is no question the trial court's ruling was wrong; it was predicated upon a clear misunderstanding of what facts the State needed to prove under State law. But that is of no moment. *Martin Linen*, *Sanabria*, *Rumsey*, *Smalis*, and *Smith* all instruct that an acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was "correct or not," *Martin Linen*, 430 U.S. at 571, and regardless of whether the court's decision flowed from an incorrect antecedent ruling of law. Here, Evans' acquittal was the product of an "erroneous interpretatio[n] of governing legal principles," but as in our other cases, that error affects only "the accuracy of [the] determination" to acquit, not "its essential character." *Scott*, 437 U.S. at 98 (internal quotation marks omitted).

*Evans*, 568 U.S. at 320.

quotation marks omitted).   Precluding further retrial in the circumstances of the present case avoids any such abuse.   Deedy's Section 2241 Petition is granted.[22]

## CONCLUSION

The Court grants Deedy's Section 2241 Petition and enjoins the State of Hawaii and/or Respondents from reprosecuting, reindicting, or retrying him for reckless manslaughter and any lesser included offenses, including in Cr. No. 11-1-1647.

Further, the State of Hawaii and/or Respondents are directed to dismiss the pending criminal case, Cr. No. 11-1-1647, with prejudice.   The Court stays this dismissal requirement until such time as this case becomes final, meaning that any and all appeals of this Court's orders and judgment have been completely adjudicated.

The State of Hawaii and/or Respondents are also directed to release Deedy from the conditions of bail and of his supervised pretrial release.   Unless the State of Hawaii and/or Respondents obtain a stay of this part of the Court's order from the

_____

[22]Because the Court enjoins the State from further prosecuting Deedy on reckless manslaughter, the same findings preclude retrial of any other lesser included offenses under Count 1.   In order to reach the instructional ruling that it did at the first trial, the circuit court necessarily determined that there existed *no* rational basis in the evidence for the jury to acquit Deedy of murder in the second degree and to convict him of either reckless manslaughter, assault in the first degree or assault in the second degree.   *Cf. State v. Kaeo*, 132 Hawai'i 451, 465–67, 323 P.3d 95, 109–11 (2014). Moreover, Respondents do not contest that without a predicate Count 1 felony offense, the State cannot proceed on the related firearms charge in Count 2.

Ninth Circuit Court of Appeals, the State of Hawaii and/or Respondents must release Deedy from the terms of his supervised pretrial release forthwith. This Court declines to stay this portion of its order.

Finally, to ensure that each party's rights are safeguarded, the Court grants certificates of appealability to the parties, to the extent required.[23] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (party challenging the court's decision "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"); *see also Miller-El v. Cockrell*, 537 U.S 322, 341 (2003).

Respondents' Motion to Strike Deedy's Petition, Dkt. No. 14, is DENIED. Deedy's Section 2241 Petition, Dkt. No. 1, is GRANTED. The Clerk of Court is directed to enter judgment in favor of Deedy and to close this case.

---

[23]Generally, neither the State nor its representative needs to obtain a certificate of appealability ("COA") in order to pursue an appeal. *See* Fed. R. App. P. 22(b)(3); *see also Bradley v. Birkett*, No. 2:03-CV-70740, 2006 WL 212024, at *2 n.4 (E.D. Mich. Jan. 27, 2006) ("Although 28 U.S.C. § 2253 appears to require a certificate of probable cause even when an appeal is taken by a state or its representative, the legislative history strongly suggests that the intention of Congress was to require a certificate only in the case in which an appeal is taken by an applicant for the writ.") (quoting Fed. R. App. P. 22(b)(3) advisory committee notes, 1967). However, a state court defendant proceeding under § 2241 must obtain a COA. *Wilson*, 554 F.3d at 825 ("[A] state prisoner who is proceeding under § 2241 must obtain a COA under § 2253(c)(1)(A) in order to challenge process issued by a state court.").

IT IS SO ORDERED.

DATED: August 10, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*Deedy v. Suzuki, et al.,* CV. NO. 18-00094 DKW-RLP; **ORDER (1) DENYING MOTION TO STRIKE PETITION; AND (2) GRANTING DEEDY'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

40